IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **FELIX OCTAVIA WEEKS** | * | |
| | * | |
| v. | * | Civil Case No. GLR-14-1686 |
| | * | |
| **COMMISSIONER, SOCIAL SECURITY** | * | |
| | * | |

*************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-referenced case was referred to me to review the parties' dispositive cross-motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' cross-motions for summary judgment. [ECF Nos. 12, 14]. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Loc. R. 105.6 (D. Md. 2014). For the reasons set forth below, I recommend that the Commissioner's motion be granted and that Mr. Weeks's motion be denied.

Mr. Weeks applied for Disability Insurance Benefits on November 1, 2010, alleging a disability onset date of August 24, 2008. (Tr. 191-94). Mr. Weeks's date last insured was December 31, 2009, so the relevant period within which he must establish disability is roughly sixteen months between August 2008 and December 2009. (Tr. 69). His claim was denied initially on January 20, 2011, and on reconsideration on May 31, 2011. (Tr. 123-26, 128-29). An Administrative Law Judge ("ALJ") held a hearing on November 27, 2012, (Tr. 79-109), and subsequently denied benefits to Mr. Weeks in a written opinion, (Tr. 64-78). The Appeals Council declined review, (Tr. 1-6), making the ALJ's decision the final, reviewable decision of

the agency.

The ALJ found that, during the relevant time frame, Mr. Weeks suffered from the severe impairments of "cerebral vascular accident (late effects of cerebrovascular disease)," diabetes mellitus, chronic liver disease, and essential hypertension "at least in combination." (Tr. 69). Despite those impairments, the ALJ determined that, between August 24, 2008, and December 31, 2009, Mr. Weeks retained the residual functional capacity ("RFC") to "perform the full range of medium work as defined in 20 CFR 404.1567(c)." (Tr. 71). After considering testimony from a vocational expert ("VE"), the ALJ determined that Mr. Weeks could perform his past relevant work as an ingredient mixer, store laborer, and registered nurse, and also other work existing in significant numbers in the national economy. (Tr. 76-78). The ALJ thus concluded that Mr. Weeks was not disabled during the period between August 24, 2008, and December 31, 2009. (Tr. 78).

Mr. Weeks disagrees. He asserts two primary arguments in support of his appeal: (1) that the ALJ failed to give controlling weight to the opinions of his treating physicians; and (2) that the ALJ erred in making an adverse credibility assessment. Each argument lacks merit.

At the outset, it should be noted that Mr. Weeks has submitted evidence reflecting that he suffered from a range of serious medical issues beginning in May of 2010, including what was either an additional stroke or a relapse from his 2008 stroke, leading to significant left-sided weakness and numbness, a diagnosis of stage IV chronic kidney disease, and a diagnosis of colon cancer. While those severe diagnoses and impairments may impact Mr. Weeks's ability to perform work related tasks from May 2010 to present, they are not relevant to Mr. Weeks's condition during the limited time frame that was considered by the ALJ in this case.

Mr. Weeks's initial argument is that the ALJ erred by assigning too little weight to the opinions of two of his treating physicians, Drs. Moskewicz and Seliger. Pl. Mot. 11-15. A

treating physician's opinion merits controlling weight only when two conditions are met: 1) it is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and 2) it is not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2); *Craig,* 76 F.3d at 590 (refined by a later amendment to regulations as described by *Pittman v. Massanari*, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001)). The difficulty in this case is that, while both physicians suggest that their opinions were valid as of August 2008, many of the diagnoses and impairments on which they relied occurred after the date last insured. In fact, Dr. Seliger did not begin treating Mr. Weeks until December 2010, almost a year after the date last insured. (Tr. 1297). The diagnoses cited in Dr. Seliger's opinion, "diabetic nephropathy" and stage IV chronic kidney disease, were not disabling impairments for Mr. Weeks prior to December 2009. *Id.* Similarly, the primary symptoms Dr. Seliger cites, left sided weakness and exertional fatigue, do not appear in the medical records in any significant fashion prior to December 2009.[1] (Tr. 1288). Dr. Moskewicz also bases his opinion on "chronic kidney disease, chronic hepatitis C, diabetes mellitus type II, hyperlipidemia, hypertension," despite the fact that these impairments either were not diagnosed prior to December 2009 or were well-controlled and not causing functional limitations before that date. *See, e.g.,* (Tr. 1481). Moreover, in March 2009, Dr. Moskewicz told Mr. Weeks that he was medically stable, had "no functional impairment" from his stroke, and "had no medical contraindications to his nursing license." (Tr. 720). In October 2009, Dr. Moskewicz's notes indicate that Mr. Weeks's residual left side weakness and slurred speech from his 2008 stroke were "now resolved." (Tr. 699). Those statements alone contradict Dr. Moskewicz's later pronouncements that Mr. Weeks had suffered from disabling medical limitations since August of 2008.

---

[1] Mr. Weeks had mild left-sided weakness following his stroke in August 2008, but it resolved within a few months. *See,* (Tr. 339, 521, 523, 528). By December 2008, Mr. Weeks reported that he only experienced weakness when he got up from a chair, and the examining doctor diagnosed "history of stroke with very minimal residua." (Tr. 481).

While the ALJ's evaluation of Dr. Moskewicz's and Dr. Seliger's opinions is not as specific as it should be, the statements contained within the analysis establish substantial evidence supporting the assignment of "little to no weight." (Tr. 76). The ALJ opines that "the opinions offered are not supported with a rationale or an identification of the signs and laboratory findings and is not consistent with the other [medical evidence of record] as a whole." *Id.* That statement is accurate, as there are no signs or laboratory findings, prior to December 2009, to support significant functional limitations. Moreover, the medical evidence of record prior to that date shows that Mr. Weeks made a nearly full recovery from the stroke symptoms he suffered in August 2008, such that he had few if any physical functional limitations until his stroke or relapse occurred in May of 2010. Accordingly, I find no error in the ALJ's assignment of weight to Dr. Moskewicz's and Dr. Seliger's opinions.

Likewise, I recommend that the ALJ's adverse credibility assessment be affirmed. The disability application and resulting hearing in this case both occurred significantly after Mr. Weeks's date last insured, following intervening medical issues which had a substantial impact on his overall health. His medical records from 2008 and 2009, however, including an essentially normal consultative examination in December 2008, demonstrate that his functional capacity was excellent during that relevant window, as noted above. Moreover, the ALJ noted several specific instances where Mr. Weeks's testimony contradicted his representations to his treating physicians. *See, e.g.,* (Tr. 75) ("The claimant testified that he was unable to sleep which required him to take naps during the day, however, on July 26, 2011, the claimant reported that he was sleeping well and that he did not need a renewal on his sleep medication."); *id.* ("Further, the claimant reported not working since the alleged onset date, but . . . was noted to be working as a farm laborer on several office visits."). Ultimately, the ALJ rested his adverse credibility assessment on the "limited and infrequent degree of treatment required, relatively benign

4

physical examinations, and demonstrated daily activities during the period at issue." (Tr. 76). After a thorough review of the record, I find that the ALJ based his assessment on substantial evidence. Accordingly, I recommend that the Commissioner's motion be granted.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that:

1. the Court GRANT Defendant's Motion for Summary Judgment [ECF No. 14]; and

2. the Court DENY Plaintiff's Motion for Summary Judgment [ECF No. 12] and CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated:  January 30, 2015                                        /s/
                                                                                Stephanie A. Gallagher
                                                                                United States Magistrate Judge